**FILED**
**DECEMBER 20, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**07 C 7156**

| | |
|---|---|
| JAMES L. KOPECKY, RECEIVER )<br>FOR BRAD A. WEAVER AND )<br>BETA ASSET MANAGEMENT, INC., )<br>)<br>Plaintiff, )<br>)<br>v. ) Case No.<br>)<br>THOMAS BANDYK, BANDYK )<br>& ASSOCIATES, BANDYK & )<br>& ASSOCIATES, SOLE )<br>PROPRIETOR, )<br>)<br>Defendants. ) | **JUDGE ANDERSEN**<br>**MAGISTRATE JUDGE MASON** |

## COMPLAINT

Plaintiff, James L. Kopecky ("the Receiver"), Receiver for Brad A. Weaver ("Weaver") and Beta Asset Management, Inc. ("Beta"), for his Complaint against Defendants, Thomas Bandyk, Bandyk & Associates, Bandyk & Associates, Sole Proprietor, alleges as follows:

## NATURE OF THE CASE

1. This case arises from a ponzi scheme perpetrated by Weaver and Beta. Weaver and Beta raised over $49 million from more than 115 investors by, among other things, making various fraudulent representations relating to their ability to trade in error accounts. Thomas Bandyk and his business entities received a profit of $1,990,992.00 from the fraudulent financial scheme. This profit was not generated from trades made by Weaver and Beta; rather it was taken in unauthorized transactions from capital raised from other investors who subsequently lost part or all of the monies they invested in Weaver's and Beta's scheme. The purpose of this lawsuit is to recover the proceeds

given to Defendants on behalf of the Receivership entities, so those funds can be equitably redistributed to the other investors.

## JURISDICTION

2.  This Court has jurisdiction pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. 754.  The Court has supplemental jurisdiction over the Illinois State law claim pursuant to 28 U.S.C. §1367.

3.  On February 2, 2007, this Court appointed James L. Kopecky as the Receiver.

## VENUE

4.  Venue is proper in this District pursuant to 28 U.S.C. 1391 as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

5.  Plaintiff, James L. Kopecky (the "Receiver"), is the Receiver for Weaver and Beta in *Securities Exchange Commission v. Weaver*, No. 04 C 8279 (hereinafter "*SEC v. Weaver*").  The Receiver was appointed for the benefit of investors to "marshal, conserve, protect, hold funds, operate, and with the approval of the Court, dispose of all assets of any nature … in which [Weaver] and [Beta] have a legal, equitable or beneficial interest, including money that [Weaver and Beta] improperly paid to investors …." (emphasis supplied)  (A copy of the Order Appointing Receiver is attached hereto as Exhibit A.)  Because the Receiver was not appointed until after the transfers which are the subject of this Complaint were made, the Receiver does not have personal knowledge

2

of the facts alleged in this Complaint and therefore alleges those facts on information and belief.

6. Weaver is an individual who, at all relevant times, resided in Chicago, Illinois. During the time periods relevant to this Complaint, Weaver held himself out as president of Beta. Weaver was employed as a registered representative by Raymond James Financial Services, Inc. ("Raymond James"), a registered broker-dealer, from 1999 until April 15, 2003.

7. Beta is an Illinois corporation with a principal place of business in Chicago, Illinois.

8. Bandyk is an individual residing in Grand Rapids, Michigan.

9. Bandyk & Associates is a corporation with a principal place of business in Michigan.

10. Bandyk & Associates, Sole Proprietor is a corporation with a principal place of business in Michigan.

## GENERAL ALLEGATIONS

### The Fraudulent Financial Scheme

11. Beginning in at least March 2003, Weaver told Defendants, as well as other investors, that he could make profitable options trades in error accounts at Raymond James.

12. Broker-dealers such as Raymond James maintain error accounts for depositing securities and funds resulting from erroneous trades. An example of an erroneous trade is the purchase of 1,000 call options when a customer requested the purchase of only 100. In that instance, the broker-dealer must sell the 900 calls

purchased in order to correct the error. The correction may result in a profit or loss. Weaver told his investors that he could "capture" profitable errors in options trades from Raymond James' error accounts for his investors.

13. Weaver represented that he would receive no compensation for error account trades on behalf of the investors. He further represented that his goal was to increase his investors' asset base to a level high enough to trade in hedge funds.

14. Based on Weaver's representations, Defendants gave Weaver and Beta approximately $3,968,325.00 for error account trading. Defendants received fraudulent documents purporting to reflect trades made in his accounts.

15. Contrary to Weaver's and Beta's representations, it is not possible to trade in the error accounts of broker-dealers such as Raymond James. Thus, no trades in error accounts were ever made.

16. During the period of Weaver's and Beta's fraudulent financial scheme, Defendants received a profit from Weaver and Beta in the amount of $1,990,992.00. The profit made by Defendants was not the result of legitimate trading by Weaver and Beta; rather, it was taken from monies invested by other investors in unauthorized transactions. Thus, the monies received by Defendants were received to the detriment of the remaining investors.

### The Commission's Lawsuit against Weaver and Beta

17. On December 23, 2004, the Commission filed its Complaint in *SEC v. Weaver* alleging that Weaver's and Beta's conduct violated section 17(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77q(a)), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)), and Rule 10b-5

promulgated thereunder (17 C.F.R. 240.10b-5).  (A copy of the Complaint is attached hereto as Exhibit B.)

18. On January 4, 2005, Weaver and Beta consented to the entry of a preliminary injunction restraining them from violating section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Securities Exchange Act.  (A copy of the Order is attached hereto as Exhibit C.)

19. On February 3, 2006, the Court permanently enjoined Weaver and Beta from violating section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Securities Exchange Act.  (A copy of the Order is attached hereto as Exhibit D.)

## COUNT I

**Disgorgement of Funds Acquired through Weaver's and Beta's Violations of the Securities Act and the Exchange Act and Rule 10b-5 Thereunder**

20. Paragraphs 1 through 19 are realleged and incorporated by reference as though fully set forth herein.

21. Weaver's and Beta's fraudulent financial scheme violated Sections 17(a)(1), (2) and (3) of the Securities Act, 15 U.S.C. § 77(q)(a)(1)-(3) and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)), and Rule 10b-5 thereunder (17 C.F.R. 240.10b-5).

22. Defendants received a profit in the amount of $1,990,992.00 from the fraudulent financial scheme perpetrated by Weaver and Beta.

23. Defendants have no legitimate entitlement to or interest in the proceeds of Weaver's and Beta's fraudulent financial scheme.

24.   Defendants should be required to disgorge the proceeds they received from Weaver's and Beta's fraudulent financial scheme, or the value of those proceeds that he may have subsequently transferred to third parties.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order requiring Defendants to disgorge all profits or proceeds they received as a result of the fraudulent conduct of Weaver and Beta as described herein and further detailed in *SEC v. Weaver*, plus prejudgment interest, as well as such other relief the Court deems just and appropriate.

## COUNT II

### Unjust Enrichment

25.   Paragraphs 1 through 19 are realleged and incorporated by reference as though fully set forth herein.

26.   Defendants unjustly received a profit in the amount of $1,990,992.00 from the fraudulent financial scheme perpetrated by Weaver and Beta.

27.   Defendants were unjustly enriched to the detriment of the other investors in the fraudulent financial scheme.

28.   Defendants' retention of the proceeds of the fraudulent financial scheme violates fundamental principles of justice, equity and good conscience.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order requiring Defendants to disgorge all profits or proceeds they received as a result of the fraudulent conduct of Weaver and Beta as described herein and further detailed in *SEC v. Weaver*, plus prejudgment interest, as well as such other relief the Court deems just and appropriate.

## COUNT III

### Uniform Fraudulent Transfer

29.     Paragraphs 1-19 are incorporated herein as though fully set forth.

30.     Beta's transfer of $1,990,992.00 to and for the benefit of the Defendants constitutes a fraudulent conveyance under the Illinois Uniform Fraudulent Transfer Act ("Act"), 740 ILCS 160/1 et seq. (2003).

31.      Beta and the Receivership entity are creditors as that term is defined in the Act.

32.     The transfer of funds from Beta to and for the benefit of the Defendants was done with actual intent to hinder, delay or defraud any creditor of Beta.

33.      The transfer of funds from Beta to and for the benefit of the Defendants was done with actual intent to hinder, delay or defraud any creditor of Beta.

34.      The transfer of funds from Beta to and for the benefit of the Defendants was done without receiving a reasonably equivalent value in exchange for the transfer or obligation, and Beta was engaged or was about to engage in the business or transaction for which the remaining assets of Beta were unreasonably small in relation to the business transaction; and intended to incur, or believe or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order setting aside the transfer; requiring the Defendants to disgorge all profits or proceeds received as a result of the fraudulent conduct of Weaver and Beta, plus pre-judgment interest; and enter such other and further relief as the Court deems just and appropriate.

## COUNT IV

### Inducing a Breach of Fiduciary Duty

35. Paragraphs 1-19 are incorporated herein as though fully set forth.

36. Defendants knew at all relevant times that Weaver and Beta owed fiduciary duties to investors and that Weaver and Beta were breaching those fiduciary duties by:

   a. manipulating and misrepresenting Defendants, Weaver and Beta's financial condition so that they could fund Defendants' scheme to defraud investors and receive unauthorized payments;

   b. abusing their position of trust and authority by entering into improper and unauthorized transactions with Weaver and Beta that were detrimental to investors;

   c. entering into unauthorized transactions with Weaver and Beta without disclosing all facts concerning their agency and dealings to investors;

   d. conspiring with Weaver and Beta to misappropriate money from Weaver and Beta through sham transactions;

37. Defendants actively induced, promoted, encouraged, and participated in Weaver and Beta's breaches of fiduciary duty.

38. Defendants gave Weaver and Beta payments as an inducement to breach their fiduciary duties.

39. Defendants induced Weaver and Beta to breach their fiduciary duties through a continuing pattern of willful, wanton, illegal, and deliberate conduct amounting to independent torts of fraud and misappropriation in excess of $24,000,000.00.

40. Defendants intended to and did directly benefit by their conduct in receiving funds from Weaver and Beta through illicit and unauthorized transactions.

41. As a direct and proximate result of Defendants' inducement of Weaver and Beta's breaches of fiduciary duty, investors suffered damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order requiring Defendants to disgorge all profits or proceeds they received as a result of the breach of fiduciary duties as described herein and further detailed in *SEC v. Weaver*, plus prejudgment interest, as well as such other relief the Court deems just and appropriate.

## COUNT V

### Aiding and Abetting Fraud

42. Paragraphs 1-19 are incorporated herein as though fully set forth.

43. Defendants actively participated in and knowingly provided substantial assistance in each of the fraudulent schemes detailed herein.

44. At all relevant times, Defendant, Weaver and Beta engaged in a scheme to defraud investors. The scheme allowed Defendants to misappropriate money from Weaver, Beta and investors under the guise of making legitimate investments. As part of that scheme, Defendants regularly:

   a. agreed to participate in fraudulent transactions with Weaver and Beta even though they knew such transactions were unauthorized by investors;

   b. used false and misleading documentation to hide the true nature of their financial dealings;

   c. actively concealed and failed to disclose the fraudulent nature of the transactions with Weaver and Beta from investors;

   d. used false and misleading documentation to misrepresent and conceal their roles in transactions from investors;

   e. devised with Weaver and Beta the scheme through which the investors were defrauded;

  f. accepted money from investors, even though Defendants knew that they had provided no consideration for the monies received;

  g. diverted a portion of the funds received from Weaver and Beta.

 45. Through the above actions, Defendants provided substantial assistance, support and encouragement to Weaver and Beta in the commission of the frauds against investors.

 46. Defendants knew their representations and omissions were false and misleading.  Defendants intended by their misrepresentations, omissions, and false pretenses to induce investors to invest with Defendants and/or Weaver and Beta.

 47. In reliance upon these misrepresentations and omissions, investors sent payments and investments to Defendants, Weaver and Beta.

 48. Defendants engaged in their fraudulent schemes through a pattern of deliberate, illegal, willful, wanton and especially egregious conduct exhibiting conscious disregard for investors' rights.

 WHEREFORE, Plaintiff respectfully requests that the Court enter an Order requiring Defendants to disgorge all profits or proceeds they received as a result of their fraudulent conduct as described herein, plus prejudgment interest, as well as such other relief the Court deems just and appropriate

December 20, 2007        Respectfully submitted,

              s/ James L. Kopecky

              James L. Kopecky, P.C.
              321 North Clark Street, Suite 2200
              Chicago, Illinois 60610
              312.527.3966
              ARDC No. 6225359